William J. Sullivan, J.
In this proceeding pursuant to section 330 of the Election Law, petitioner M. Hallsted Christ seeks an order declaring that he is the winner of the primary election held on September 8, and therefore is the duly nominated candidate of the Conservative Party for the position of Nassau County Comptroller.
After a canvass and recanvass of the votes cast at said election the Board of Elections certified the total vote to be 1774 for D’Agostino and 1765 for petitioner Christ. That certification, however, was subject to a list of irregularities involving six election districts, as follows:
Inspectors Reported Apparent
as Number of Found on Machine Counters Excessive
A. Dist.—E. Dist. Conservatives Voting D’Agostino Christ Votes
12 17 3 u 4 12
13 77 2 9 1 8
16 75 3 11 2 10
17 12 25 7 6 1
18 74 7 6 2 1
21 37 5 2 4 1
The apparent excess votes are included in the totals reported in the board’s certification.
Both petitioner and respondent contend that the irregularities involved do not require that this court order a new election since they do not "render impossible a determination as to who rightfully was nominated or elected” (Election Law, *251 § 330, subd 2). Of course, the parties do not agree as to what is the proper disposition by this court. On the one hand, petitioner argues that he should be certified as the winner of the primary election while respondent D’Agostino contends that the irregularities are insufficient to show a probability that the results of the election would be changed.
After analyzing the results of the election, this court has concluded that there is no need to deal with probabilities. There is a mathematical certainty that petitioner Christ has received more valid votes for election than has respondent D’Agostino. The irregularities in the six election districts certified by the Board of Elections consist of total votes appearing on the machine counters for the two Conservative candidates which exceed the number of voters eligible to vote i.e., those who have signed the register as required by section 198 of the Election Law. The reason for these irregular votes is not certain. Whether they resulted from machine errors or because persons ineligible to vote in the Conservative primary did so, one thing is clear. Those votes should not and cannot be counted. Obviously a court cannot determine for which candidate they were cast. In situations where that question is important in order to find whether the irregularities would be likely to affect the outcome of the election, courts have generally assumed that the irregular votes were cast in the same proportion as the valid votes were cast (see Matter of Badillo v Santangelo, 15 AD2d 341; Matter of De Martini v Power, 27 NY2d 149). The fallacy in using that rule in the present case becomes obvious when it is applied to the specific numbers involved here. D’Agostino, with 1774 (including irregular) votes received 50.13% of the vote. Christ with 1765 (including irregular) votes received 49.87% of the vote. In the 12th Assembly District (Election District 17) there were 12 excessive votes cast. If 50.13% of the excessive votes were cast for D’Agostino and 49.87% of the excessive votes were cast for Christ, the candidates would have received respectively 6.01 and 5.98 of those votes or 6 each. However, it is clear that Christ could not have received 6 invalid votes since he only received a total of 4 votes in that district. Therefore, out of the 12 invalid votes cast, at least 8 had to have been cast for D’Agostino. By the same computation the 13th Assembly District (Election District 77) would give D’Agostino 4.01 votes and Christ 3.98 votes (or 4 votes each), and in the 16th Assembly District (Election District 75) D’Agostino 5.01 votes *252 and Christ 4.98 votes (or 5 votes each). However, Christ only received one vote in the 13th Assembly District (Election District 77) and 2 votes in the 16th Assembly District (Election District 75). Therefore, it is apparent that no more than one irregular vote in the 13th Assembly District (Election District 77) and 2 irregular votes in the 16th Assembly District (Election District 75) could have been cast for Christ and that the remaining irregular votes in each of those districts respectively 7 and 8 must have been cast for D’Agostino. In each of the three remaining districts one irregular vote appeared. The proportion formula cannot be applied to those districts. However, it is apparent that no more than one irregular vote in each of the districts could have been cast for Christ and the court will assume that those votes were so cast. Therefore, at the very least, 23 of the 33 irregular votes in the six districts were included in the total vote of 1774 for D’Agostino and no more than 10 irregular votes in the six districts were included in the total vote of 1765 for Christ. Deducting the invalid votes from each, D’Agostino is left with 1751 votes and Christ with 1755 votes. The following chart will illustrate that computation.
Conserv. Voters Found on
Signing Buff Machine Excessive Excessive Votes Remaining
A. Dist. — I S. Dist. Card Register Counters Votes Deducted from Votes
D’Agostino Christ Christ D’Agostino Christ D’Agostino
12 17 3 . 11 4 12 4 8 0 3
13 77 2 9 1 8 1 7 0 2
16 75 3 11 2 10 2 8 0 3
17 12 12 7 6 1 1 0 5 7
18 74 7 6 2 1 1 0 1 6
21 37 _5 2 £ JL 0 _3_ 2_ 32 46 19 33 10 23 9 23
D’Agostino Christ
Summary:
Total Votes Appearing on Voting Machine as Certified by
Board of Canvassers................................... 1774 1765
Minus:
Irregular Votes Appearing for D’Agostino, no less than.. 23
Irregular Votes Appearing for Christ, no more than..... 10
Valid Votes (no more than ............................ 1751
no less than).............................. 1755
This court has been unable to find any cases in which the irregularities in a primary election resulted in a court reversing the results of the election. The provisions of subdivision 2 of section 330 of the Election Law specifically authorize the court to direct a new primary election where the primary "has been characterized by such frauds or irregularities as to *253 render impossible a determination as to who rightfully was nominated or elected”. However, this is not a case where it is impossible to determine who was nominated. The unique mathematical and factual combination involved here makes it clear that so great a number of invalid votes appeared upon the voting machines for respondent D’Agostino that he has lost the plurality indicated in the recanvass. A new election is unnecessary to correct the inequities resulting from the irregularities involved in the primary election held on September 8, 1977.
Pursuant to section 330 of the Election Law, the Supreme Court is vested with summary jurisdiction to determine all questions of fact and law arising out of the nomination of any candidate. It is this court’s opinion that the facts and law here compel a decision that petitioner Christ has received at least 4 votes more than respondent D’Agostino in the primary election and that he has been chosen by the eligible voters of the Conservative Party as the candidate of such party for the office of Nassau County Comptroller. Accordingly, an order to that effect will be granted.